IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| WILLIAM M. PICKARD III,<br>  Plaintiff,<br><br>v.<br><br>DEBORAH WREN, personally and in<br>her capacity as in the Affordable Family<br>Division at SPM Property Management, LLC;<br>NIKESHIA BAILEY, personally and in<br>her capacity as Community Manager at<br>Highland Manor as operated by SPM<br>Property Management, LLC.<br>and FICTITIOUS DEFENDANTS A, B, C,<br>D, E, F, G, H, I, J, who caused or contributed<br>to the damages complained of in this<br>Complaint, and whose identities are<br>unknown or not yet discerned but will<br>be supplied by amendment when<br>ascertained;<br>  Defendants. | 2:19-cv-00885-JHE<br><br>CASE NO._____<br><br>JURY TRIAL: YES<br><br>TRO REQUESTED |

## COMPLAINT

This Complaint for relief sets forth the following:

### I. PARTIES

1. The Plaintiff is William Marshall Pickard III who resides at 2040 Highland Ave South Apt 401, Birmingham, Jefferson County, AL 35205-3834; telephone no. (205) 586-9055, email address: *marshall3d@hotmail.com*.

2. The Defendants are:

(a) Deborah Wren, whose address in her capacity at SPM is 2101 Highland Avenue, Suite 400, Birmingham, AL 35205; telephone no. (205) 933-1020, and

(b) Nikeshia Bailey, whose address in her capacity at Highland Manor is 2040 Highland Avenue South, Birmingham, AL 35205-3834; telephone no. (205) 933-7543.

## II. JURISDICTION

3. The U.S. District Court cited above has exclusive jurisdiction over the claims stated below under the Fair Housing Act, Section 504 of the Rehabiliation Act of 1973, the Americans with Disabilities Act of 1990 *et seq.*, other applicable federal statutes, U.S. Constiutional law, and federal question jurisdiction under 28 U.S.C. § 1331;

## III. STATEMENT OF RELEVANT FACTS

6. The Plaintiff is a resident of Highland Manor, for whom Defendant Nikeshia Bailey is the Community Manager at present, and for whom Defendant Deborah Wren is Regional Manager to the best belief of the Plaintiff and is on the Affordable Family Division of SPM Property Management who manages and operates Highland Manor.

7. The Plaintiff has been suffering elder abuse, harassment, extortion, denial of reasonable accommodates and other injuries and damages summarized below and in the Exhibits at the hands of Defendant Bailey. By refusing the statutory requirement of the Fair Housing Law to open a dialogue with the Plaintiff, or by failing to open a dialogue concerning the other issues raised by Plaintiff despite a promise to do so, Defendant Wren is specifically liable under the Fair Housing Law and generally liable for all of the abuses perpetrated by Defendant Bailey.

8. On June 4, 2019, the Plaintiff drafted a letter to Ms. Gail Graves, Vice President of SPM Property Management, summarizing the facts by which Defendant Bailey has been abusing, harassing, discriminating against, extorting, denying reasonable accommodations, denying consideration for medical condition, bullying, prevaricating, threatening, threatening eviction on false premises, engaging in severe emotional abuse, intimidating, fabricating false rules, denying Plaintiff Constitutional rights of association, due process and equal protection including "banning" friends without proof or valid cause, issuing false lease "infractions" without stating a violation and without proof, tampering with my mail in egregious and outrageous violation of the laws of the United States Postal Service, very serious crimes, and other criminal acts and civil torts and misconduct as stated in this letter (copy attached as "Exhibit "A").

9. The Plaintiff drafted 12 Grievances in this regard also on June 4, 2019 (see copies attached as Exhibit "B") accompanied by the letter which was incorporated by reference into the Grievances. Due to the exigencies of the abuses and situation, the Plaintiff brought the letter and Grievances to the SPM Office on June 4th, but was informed that Ms. Wren would initially be the person to receive and process these Grievances. She was gone for the day, but an appointment was made for Plaintiff to meet with her at 8:30 the next morning, June 5th. In a lengthy meeting commencing at 8:30 a.m. on June 5th, Ms. Wren pledged that she would review Plaintiff's submissions, that she was equally and unbiasedly concerned for the Plaintiff as a tenant, that she would be fair and unbiased in reviewing his claims, and that she specifically would meet with the Plaintiff to review them the next morning, June 6th, after meeting with Ms. Bailey.

10. The next morning, June 6, 2019, she refused to meet with the Plaintiff or even to take his calls. Plaintiff was informed by her assistant, Brittany, that she required more time and would be in touch with Plaintiff the next day, Friday, June 7th.

11. On Friday, Ms. Wren alleges that she came to Highland Manor with a response letter, that she knocked on my door and that there was no answer. This is not plausible.

12. She called the Plaintiff at 1:33 p.m. on this date and said that she had here response letter and wanted to set up a time to meet.

13. Plaintiff attempted to return the call and then went to her office. He was told that she was not there, but to get the letter from Defendant Bailey at Highland Manor.

14. In one of the grievances, Plaintiff had asked for an informal protective order proscribing contact with Ms. Bailey and prohibiting her from contacting Plaintiff or coming within his vicinity. This forced him into further trauma by contact with her. Plaintiff went to Highland Manor office and was told by Ms. Bailey that the letter was not there. Ms. Bailey called Ms. Wren who said that she would not deliver the letter until Monday. Ms. Wren insisted that she deliver the letter to Plaintiff at the lobby of Highland Manor, where Ms. Bailey and the office is located. Otherwise, she said she would mail the letter. Ms. Bailey put her on the speaker of the phone but Ms. Wren got upset and said that she would not talk to the Plaintiff, that she would only deliver the letter Monday,

insisting that the venue be the Highland Manor lobby, or by mailing it. Either way, Plaintiff was forced into contact with Ms. Bailey. Ms. Bailey's office is in the lobby as stated above. Ms. Bailey also handles the U.S. Mail as set out in detail in the letter (Exhibit "A"). This action by Ms. Wren, withholding the letter and setting conditions that forced further trauma on the Plaintiff, was particularly cruel, unreasonable, and malicious on Ms. Wren's part.

15. Ms. Wren became agitated on the phone and stated with hostility that she would only deliver the letter, and would not engage in any further discussions.

16. Ms. Wren had promised to meet with Plaintiff **before** preparing any response to allow for fairness- to listen to both sides before preparing a response.

17. The Fair Housing Act requires a person such as Defendant Wren to "open a dialogue" before any findings regarding reasonable accommodation, and this principle is asserting as applying to the other issues raised in the letter (Exhibit "A") and the Grievances (Exhibit "B").

18. After assuring the Plaintiff that she cared equally for tenants as well as others, that she was diligent in hearing both sides without bias, that she would listen to Plaintiff on par with Ms. Bailey, she reneged on these obligations and now is refusing to hear Plaintiff's side, to discuss the issues with him, to open a dialogue with him as required by statute, and otherwise treat him fairly and equitably as she had pledged to do and had an obligation to do per federal statutes, rules and regulations.

19. In so doing, she is complicit with Defendant Bailey by colluding in Defendant Bailey's criminal and civil misconduct, and is equally culpable criminally and civilly with Defendant Bailey as summarized in the letter and Grievances (Exhibits "A" and "B").

## IV. CAUSES OF ACTION

20. <u>COUNT ONE: VIOLATION OF FAIR HOUSING LAW</u>: The Fair Housing Law requires a Landlord to open a dialogue with a tenant specifically in the case where a

reasonable accommodation is requested by the tenant.[1] Plaintiff avers that this same obligation is implicit in issues regarding the Americans with Disabilities Act (ADA), the Rehabilitation Act of 1973, the Unruh Act, and related acts regarding persons with disabilities. Defendant Wren has violated this statute by refusing to open said dialogue as required by statute, causing further trauma to the Plaintiff and the harms described above regarding the conduct of Defendant Bailey. By so doing, she has abandoned her promises of fairness free of bias, to listen to both sides, to weigh federal issues as required by law, and attendant misconduct. Defendant Wren claims 30 years' experience in these matters. As such, she either knew of this legal requirement and is contumaciously violating it, or she does not know of this requirement and is incompetent despite her claims of many years of experience.

21. COUNT II: ELDER ABUSE IN MANAGING HUD FACILITY: Defendant Bailey has engaged in elder abuse from the inception of her contacts with the Plaintiff as set out in the letter and grievances (Exhibits A and B). Defendant Wren is complicit in this abuse by colluding with Defendant Bailey as stated above.

22. COUNT III: INVIDIOUS DISCRIMINATION IN VIOLATION OF SECTION 504 OF THE REHABILITATION ACT OF 1973 AND THE ADA: Defendant Bailey has discriminated against the Plaintiff in violation of said laws and has excluded the Plaintiff from participation in, has denied Plaintiff the benefits of, and has subjected him to discrimination under programs, most of all housing programs, and activities receiving Federal financial assistance as set out more particularly in Exhibits A and B hereto. Defendant Wren is now complicit in this abuse by colluding with Defendant Bailey as stated above.

23. COUNT IV: DENIAL OF REASONABLE ACCOMMODATIONS UNDER SPM/HUD REQUIREMENTS: Defendant Bailey has denied the Plaintiff reasonable accommodations most specifically regarding his medical condition as set out more particularly in Exhibits A and B hereto. Defendant Wren is now complicit in this abuse

---

[1] See, e.g. DOUGLAS v. KRIEGSFELD CORP., 884 A.2d 1109, (C.A. D.C. 2005)

by colluding with Defendant Bailey as stated above. This includes Defendant Wren's refusal to obey the law and open a dialogue in this regard.

24. COUNT V: DENIAL OF FIRST AMENDMENT RIGHTS OF ASSOCIATION: Defendant Bailey has violated the Plaintiff's Constitutional First Amendment rights of association by alleging a lease violation for the number of visits from friends and associates without any proof that same adversely affects the peaceful enjoyment of other residents to the community. She also has done so by "banning" friends and associates from the property without any valid cause as set out more particularly in Exhibits A and B hereto. Defendant Wren is now complicit in this abuse by colluding with Defendant Bailey as stated above.

25. COUNT VI: FURTHER ELDER ABUSE and EMOTIONAL ABUSE UNDER THE ADA: Defendant Bailey subjected Defendant to further emotional abuse, harassment, discrimination, extortion, bullying, prevarication, threats, intimidation, false fabrication of rules, regulations, and issues, and related misconduct by falsely stating that Plaintiff had to have a co-signor without which he would be unable to lease the apartment and would be subject to homelessness, and denying his long-time live-in aide without providing cause for this decision and placing him at peril of losing his apartment, having surrendered his existing apartment at the time at Birmingham Tower as set out more particularly in Exhibits A and B hereto. Defendant Wren is now complicit in this abuse by colluding with Defendant Bailey as stated above.

26. COUNT VII: FURTHER ELDER ABUSE AND EMOTIONAL ABUSE UNDER THE ADA: Defendant Bailey subjected Defendant to further emotional abuse, harassment, discrimination, extortion, bullying, prevarication, threats, intimidation, false fabrication of rules, regulations, and issues, and related misconduct by the very cruel, malicious and false threats of and premises for eviction as set out more particularly in Exhibits A and B hereto. Defendant Wren is now complicit in this abuse by colluding with Defendant Bailey as stated above.

27. COUNT VIII: FURTHER ELDER ABUSE AND EMOTIONAL ABUSE UNDER THE ADA: Defendant Bailey subjected Defendant to further emotional abuse,

harassment, discrimination, extortion, bullying, prevarication, threats, intimidation, false fabrication of rules, regulations, and issues, and related misconduct by the false accusation, false threat of lease infraction, and falsely premised allegation that Plaintiff is culpable for persons not under his control, specifically alleging visitors of whom Plaintiff was unaware and could not be culpable for as set out in 24 C.F.R. 5.100 and more particularly in Exhibits A and B hereto. Defendant Wren is now complicit in this abuse by colluding with Defendant Bailey as stated above.

28. COUNT IX: CRIMINAL EXTORTION: Defendant Bailey subjected Defendant to criminal extortion by inducing him to agree under duress and coercion to an extortionate extension of credit in violation of 18 U.S.C. § 894 (a felony) regarding repayment of alleged damage to a 3 foot section of drain pipe that Plaintiff allegedly caused, without submission of any proof, when he moved into his apartment. She coerced him under false threat of eviction and duress of time (placing letters on his door demanding that he appear at the office the next day to sign this extortionate extension of credit), to a promise to pay $330.00 for this 3 feet of drain pipe, also without allowing him to present this damage for payment by his auto insurance policy, or by allowing the standard procedure for him to obtain estimates and select the lowest estimate to fix the damage assuming *arguendo* that he caused the damage. Defendant Bailey had stated that she had proof of the damage on camera but failed to produce this proof, waiting weeks to suddenly post these letters and demand that he appear the next day to sign said extortionate extension of credit as set out more particularly in Exhibits A and B hereto. Defendant Wren is now complicit in this abuse by colluding with Defendant Bailey as stated above.

29. COUNT X: OUTRAGEOUS CRIMINAL VIOLATIONS OF U.S. POSTAL LAWS: Defendant Bailey has and continues to criminally violate laws governing the United States Mail and postal services by tampering with, handling, obstructing, retarding, withholding, violating privacy, deserting, illegally conveying and other serious and criminal violations as set out more particularly in Exhibits A and B hereto. Defendant Wren is now complicit in this abuse by colluding with Defendant Bailey as stated above.

30. COUNT XI: VIOLATION OF SPM/HUD PUBLISHED RULES AND FABRICATING FALSE RULES: Defendant Bailey has violated Rules published and posted by SPM/HUD regarding operation of a small business, specifically allowed under SPM Rules as set out in Plaintiff's lease as set out more particularly in Exhibits A and B hereto. Anticipating distortion of the existing rules and policies stated in the lease, the Plaintiff is now a silent partner in the business, deriving no income or benefit except use without charge for the internet services, and the ability to purchase clothing at discounted prices and to save money on his clothing needs due to his membership in the business. Defendant Wren is now complicit in this abuse by colluding with Defendant Bailey as stated above. Defendant Bailey has also fabricated Rules that do not exist also as set out more particularly in Exhibits A and B hereto. Defendant Wren is now complicit in this abuse by colluding with Defendant Bailey as stated above.

31. COUNT XII: REPRISALS FOR FILING GRIEVANCES AND COMPLAINTS: Defendant Wren, in complicity with Defendant Bailey, is acting with hostility and adverse intimidation and actions for Plaintiff's filing of the 12 Grievances and Complaints, despite Defendant Wren's assurances that there would be no such reprisals. The adverse actions, emotional abuse and trauma she inflicted on Friday, June 7, 2019, is the first of these reprisals. Defendant Wren's reprisals are particularly and extremely cruel in light of the Plaintiff's vulnerability and past abuses and trauma at the hands of Defendant Bailey at Highland Manor.

32. COUNT XIII: WITHHOLDING DOCUMENTS IN VIOLATION OF DUE PROCESS: Defendant Wren promised to provide Plaintiff a copy of his file but has failed to do so in violation of his rights of due process to be informed of any false and/or malicious information that may be contained therein.

33. COUNT XIV: FAILURE IN PROMISING TO PROVIDE COPY OF PROCESS TO PLAINTIFF'S ATTORNEY: Defendant Wren has refused and failed in her promise to provide a copy of the response letter to Plaintiff's attorney in violation of his Sixth Amendment right to be represented by counsel in this matter.

34. <u>COUNT XV: VIOLATION OF RIGHTS OF DUE PROCESS AND EQUAL PROTECTION:</u>  In each of the accounts stated above Defendant Bailey and Defendant Wren have violated the Plaintiff's rights of due process and equal protection under the 5th and 14th Amendments of the Constitution as set out more particularly in Exhibits A and B hereto. Defendant Wren is now complicit in this abuse by colluding with Defendant Bailey as stated above.

35. <u>COUNT XVI: FAILURE TO SHOW CAUSE FOR ELDER ABUSE:</u> Due to her elder abuse, Defendant Bailey has failed to show cause as invoked as to why she should not be proscribed from further contact with the elderly pursuant to Plaintiff's first Grievance (Exhibit B) Defendant Wren is now complicit in this abuse by colluding with Defendant Bailey as stated above and should be issued the same show cause order.

36. <u>COUNT XVII: FAILURE TO SHOW CAUSE FOR SECTION 504 DISCRIMINATION:</u>  Defendant Bailey has failed to show cause as to why she should not be dismissed as Community Manager or any other HUD programs regarding housing due to her Section 504 discrimination for which SPM's policies are strict and exacting, as set out more particularly in the Second Grievance (Exhibit B). Defendant Wren is now complicit in this abuse by colluding with Defendant Bailey as stated above. She should be issued the same show cause order and should be subject to SPM's specific and non-negotiable policies for such discrimination.

37. <u>COUNT XVIII: FAILURE TO SHOW CAUSE REGARDING CRIMINAL OFFENSES:</u> Defendant Bailey has failed to show cause pursuant to the Grievances (Exhibit B) as to why she should be immediately removed from any management or administration related to HUD housing due to her acts of criminal elder abuse, extortion, and violations of U.S. Mail laws as set out more particularly in Exhibits A and B hereto. Defendant Wren is now complicit in this abuse by colluding with Defendant Bailey as stated above, and should be issued the same show cause order.

V: FICTITIOUS DEFENDANTS

38. Plaintiff is reserving his right to name defendants who at this point may be directly or vicariously liable until more facts can be ascertained in this regard.

Plaintiff also reserves the right to amend this Complaint to set out additional counts and damages, particularly upon receipt of the "response letter" of Ms. Wren if received.

## VI. RELIEF/DAMAGES

39. Plaintiff seeks relief by expungement of all false information and documents from his file to include reasons, if any in his file, for, *inter alia* denial of his reasonable accommodations, allowed activities, associations with friends and acquaintance, his live-in aide, and for him and his attorneys to examine his file to ensure such relief.

40. Plaintiff seeks relief by expungement of the so-called "response letter" that Defendant Wren has drafted, and has cruelly withheld over the weekend, insofar as this letter states any adverse aspect, issue or action against Plaintiff, due to the violation of Defendant Wren's duty to open a dialogue and to obtain Plaintiff's input and his side as she pledged to do on June 5th in the appointment she scheduled on June 6th, but cancelled, together with her duty to act impartially by consulting both sides of the matters.

41. Plaintiff seeks a show cause order requiring the Defendants to show cause due to their outrageous criminal and civil misconduct as to why they should not be permanently excluded from any position dealing with the elderly as well as any position related to administration or involvement with HUD or other federal housing programs.

42. The law specifically allows for award of compensatory damages for violations of the ADA, for the great mental distress suffered by the Plaintiff, as well as punitive damages for civil actions generally. The Plaintiff should be awarded compensatory damages as well as punitive damages for the outrageous misconduct, abuses and injuries stated in this Complaint as will be assessed and supplied by amendment.

43. The actions and inactions of the defendants are intentional and aggravated, causing and justifying extended liability for Plaintiff's damages.

## VII. INJUNCTIVE RELIEF

44. The Plaintiff seeks a temporary restraining order enjoining the Defendants from further abuses, particularly falsely premised lease infractions and threats of eviction, from withholding of reasonable accommodation, and other adverse actions they have taken and are taking as described above including any adverse content in Defendant

Wren's so-called "response letter" that she is withholding from Plaintiff unless he appears in the lobby of Highland Manor forcing unconscionable and traumatic contact with Defendant Bailey, or placement in the mail which is criminally under Defendant Bailey's control at present. Plaintiff will not be bullied by Wren into such abusive delivery terms for this letter. The letter is undelivered at present and so shall remain if this bullying continues. Plaintiff is seeking an injunctive order of protection from Defendant Bailey's, and now Wren's abuses, threats, intimidation, and abuses of process.

45. Injunctions are clearly available in actions such as this where threats of eviction have been made and reasonable accommodations withheld. See *Valencia v. Springfield, Illinois,* 883 F.3d 959 (7th Cir. 2018). Plaintiff meets the three threshold requirements for such relief. First, he is already suffering great, immediate and irreparable harm as stated above, particularly with Defendant Wren's hostile and adverse actions just taken, and will continue to do so during the interim period prior to final resolution of his claims. Second, traditional legal remedies are inadequate primarily in light of the immediate injuries being suffered requiring immediate action and relief. Third, the Plaintiff has presented peremptory grounds for relief, many admitted to by the incontrovertible facts and those admitted to by the Defendants, hence, strong likelihood of success on the merits, such as regarding the issue of reasonable accommodation where Plaintiff has been wrongly denied same despite specific Rules, Regulations and Policies set out in the Complaint and Exhibits requiring him to be granted such reasonable accommodations. Plaintiff's other grounds for relief are equally compelling and likely to succeed on the merits.

46. In the balancing phase, it is clear that the irreparable harm being suffered by the moving party, the Plaintiff, would endure without the protection of the injunction, which far outweighs any harm or adversity for the Defendants. The balance of harms tilts strongly in favor of the Plaintiff.

47. For these reasons, Plaintiff states strong if not peremptory grounds for issuance of a temporary restraining order to prevent further harms and further severe criminal and civil misconduct while this case is pending.

## VII. CERTIFICATION AND CLOSING

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying or reversing existing law; (3) the factual contentions have evidentiary support; and (4) the complaint otherwise complies with the requirements of Rule 11.

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Respectfully submitted on this 10th day of June, 2019.

William Marshall Pickard III, Plaintiff, *Pro Se*
2040 Highland Manor S, Apt. 401
Birmingham, AL 35204-3834
*marshall3d@hotmail.com*
(205) 586-9055